IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| John F. Oglesby, ) | Case No. 8:13-cv-03378-TMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Robert M. Stevenson, III, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants Harvey Beech, Erika Brown, Ebony Guess, and Margo Williams (for purposes of this motion, "Defendants").[1]  [Doc. 66.]  Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983.  [Doc. 1.]  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on November 26, 2013.[2]  [Doc. 1.]  On May 23, 2014, Defendants filed a motion for summary judgment.  [Doc. 66.]  That same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed

---

[1] Defendants Robert M. Stevenson, III, Dennis Bush, Sharonda Sutton, John Tomarchio, Tamika Montgomery, Takisha Smity, Carol Mitchell-Hamilton, Seraphine Niati, Yvonne Munro, Linda Wooten, Sherrell Orange, Harold Scott, Larry Cook, Gina Craig and Margaret Jackson filed a separate motion for summary judgment on May 23, 2014.  [Doc. 38.]

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on November 26, 2013.  [Doc. 1-7 (envelope marked as received by prison mailroom on November 26, 2013).]

to adequately respond to the motion. [Doc. 67.] Plaintiff filed a response in opposition on July 16, 2014. [Doc. 82.] Accordingly, Defendants' motion is now ripe for review.

## BACKGROUND

Plaintiff is an inmate at Broad River Correctional Institute ("Broad River") who filed suit alleging deliberate indifference to his serious medical needs. [Doc. 1 at 3.] Plaintiff alleges that Defendants "failed to provide him with prompt and proper treatment for a chronic anal fissure." [*Id.* at 4.] Plaintiff claims he experienced numerous delays in receiving treatment, including a five-month delay before he received a complete examination of the issue from a doctor, a six-month delay before he received an outside consultation, a three-month delay before Plaintiff was ordered to stop the medication that was harming him, and a nine-month delay before he underwent a surgical procedure. [*Id.* at 4–5.] Plaintiff states that he was sent to Broad River in September of 2012, and issued only his blanket and underwear when he arrived. [*Id.* at 5.] He began to have complications using the toilet and reported during his intake interview that he had pain and bleeding in his rectum. [*Id.*] Plaintiff was sent to sick call on September 27, 2012, and was given hemorrhoid ointment and stool softener but was denied pain medication. [*Id.* at 5–6.] Plaintiff reports that he received no relief from the medications and was in "mental anguish and extreme pain" from the swelling and bleeding. [*Id.* at 6.] He returned to sick call on October 16, 2012, and was given cream and ibuprofen. [*Id.*] Plaintiff claims he received no medical attention from October 28, 2012, to November 16, 2012, despite requests to be seen. [*Id.* at 7.] Plaintiff then reports that he passed out on November 2, 2012, and

was taken to medical. [*Id.* at 8.] He told the staff that he passed out from his anal pain and he was given ointment, ibuprofen and suppositories. [*Id.*]

Plaintiff filed a grievance on November 11, 2012, that he was not being afforded proper treatment. [*Id.* at 9.] Plaintiff continued to request sick call, which he says was denied him. [*Id.*] On November 18, 2012, Plaintiff was seen at sick call and explained that he was in extreme pain, was having trouble using the toilet and needed pain medication. [*Id.*] He was promised suppositories and ointment but never received them. [*Id.*] Plaintiff sent a letter to the Department of Labor, Licensing and Regulation Office of Investigation and Enforcement on November 18, 2012, complaining of his lack of medical treatment. [*Id.* at 10.] Plaintiff continued to request sick call from November 19, 2012, until November 28, 2012, but was not seen. [*Id.*] On November 29, 2012, Plaintiff asked for pain medication, and the next day received stool softener, pain medication and hemorrhoid cream. [*Id.* at 12.] Plaintiff claims the pain medication was ineffective and he was harassed each time Defendant Erika Brown gave it to him. [*Id.*]

Plaintiff also claims Harvey Beech intentionally misdirected him on the proper use of a prescribed cream. [*Id.* at 52.] Plaintiff alleges that the cream he was given actually exacerbated rather than alleviated his injuries. [*Id.* at 12.] He claims he was not seen on sick call from December 25, 2012, through December 31, 2012, and that his stool softener was deliberately withheld. [*Id.* at 13.] Plaintiff alleges Ebony Guess ignored his requests for medical attention on January 11 and 12, 2014. [*Id.* at 51.] Plaintiff sent multiple requests to various prison officials about his condition, and was seen in sick call on January 17, 2013, and the nurse sent a request for Plaintiff to be seen by a doctor. [*Id.* at

3

13.] Plaintiff claims he was never given the stool softener he was promised. [*Id*. at 14–15.] He alleges that he continued to request help from January 24, 2014, until February 7, 2013, to no avail. [*Id.* at 15.] Plaintiff spoke with his mental health counselor about his medical issues, and his counselor contacted the medical staff. [*Id.*] Plaintiff was not taken to medical until February 19, 2013. [*Id.* at 16.] He was prescribed stool softener and ibuprofen. [*Id.*] Plaintiff's sister contacted prison officials over concern about his medical needs. [*Id.*]

On February 25, 2013, Plaintiff was informed that he was to be taken to Kirkland Correctional Institution ("Kirkland") for a surgical consult, but Kirkland was on lock down from a flu epidemic. [*Id.*] On February 26, 2013, Plaintiff told the medication nurse that he was in pain and bleeding from his rectum but she told him there was nothing wrong with him and laughed at him. [*Id.* at 19.] Plaintiff was taken to the USC Surgery Clinic at Kirkland on March 11, 2013. [*Id.*] The doctor recommended that Plaintiff take sitz baths, fiber and undergo a colonoscopy. [*Id.*] Plaintiff was given his fiber but no narcotic pain medication, as he requested. [*Id.* at 20.] Plaintiff complained that he was not being afforded his sitz baths and made multiple requests from March 27, 2013, until April 7, 2013. [*Id.* at 21.] He further complained that Margo Williams was aware of the ordered sitz baths and had an affirmative obligation to schedule them. [*Id.* at 47.]

On April 8, 2013, Plaintiff was placed on a liquid diet in preparation for his colonoscopy on April 9, 2013. [*Id*. at 21.] Plaintiff claims his grievances were not properly considered and that his extreme pain continued. [*Id*. at 22–23.] Plaintiff passed out from pain on May 1, 2013, and was taken to medical. [*Id.* at 24.] At that point, Plaintiff was

advised that he should stop the cream, and that the order for him to stop should have been relayed to Plaintiff months before. [*Id.*] Plaintiff returned to Kirkland on May 6, 2013, and received a report from the colonoscopy. [*Id.* at 25.] Plaintiff alleges that his pain and lack of access to medication and sitz baths continued through May and June. [*Id.* at 25–26.] Plaintiff returned to Kirkland on July 1, 2013, for a follow up with the surgeon, who instructed Plaintiff that Plaintiff needed to use the sitz bath. [*Id.*] Plaintiff was allegedly warned that if he failed to use the sitz bath, he would experience irreversible damage in his rectum, including the inability to control his bowels. [*Id.* at 27.]

On July 24, 2013, Plaintiff was informed that he could not have access to the sitz bath because of security concerns. [*Id.* at 30.] Plaintiff's same issues continued through August. [*Id*. at 31–33.] Plaintiff repeatedly asked about the sitz bath in August and September, and was denied each time for "security" purposes. [*Id.* at 34–35.] On October 7, 2013, Plaintiff returned to Kirkland and was examined by two doctors, to whom he complained that the ointments prescribed made his rectum raw and that the prison was not addressing the issue. [*Id.* at 36.] Plaintiff alleges that for the rest of October, he was denied ibuprofen. [*Id.* at 36–37.] Plaintiff alleges that each time he requested medication, medical staff became belligerent toward him. [*Id*. at 37–39.] Plaintiff returned to Kirkland on November 18, 2013, for another surgical consult. [*Id.* at 39.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private

behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

9

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Liberally construing his Complaint, Plaintiff contends Defendants were deliberately indifferent to his serious medical needs by denying him medical treatment for his anal fissure and hemorrhoids.  [Doc. 1.]  Defendants argue (1) Plaintiff has failed to comply with the South Carolina Medical Malpractice Reform Act,[3] (2) Plaintiff has failed to establish his claim because he has failed to demonstrate that Defendants exhibited deliberate indifference to Plaintiff's medical needs, and (3) Plaintiff has failed to exhaust his administrative remedies.[4]

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).  Deliberate indifference exists when prison officials know of a substantial

---

[3] In Defendants' motion for summary judgment, they argue Plaintiff's Complaint should be dismissed because Plaintiff failed to file an expert affidavit with the Complaint as required in a medical malpractice action. [Doc. 66-1 at 10.]  The requirement of an expert affidavit, however, applies to state law medical malpractice claims.  Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging violations of federal, not state, law.  [Doc. 1; *see also* Doc. 82 at 11 ("[P]laintiff is not directed by Fed. Rule Civ. Proc. requirements to file his 42 U.S.C. § 1983 complaint under the S.C. Medical Malpractice Reform Act of 2005").]  That Plaintiff did not provide an expert affidavit with his complaint does not mandate dismissal of his § 1983 claim.

[4] Defendants argue they are entitled to summary judgment because although Plaintiff filed grievances related to his medical care, Defendants were not specifically mentioned in the grievances.  Because Plaintiff filed both Step 1 and Step 2 grievances with respect to his medical treatment, [Docs. 1– 3] the Court declines to recommend that summary judgment be granted based on failure to exhaust administrative remedies and will address the merits of Plaintiff's claims.

risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of

11

treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, the Court assumes without deciding that Plaintiff has a serious medical condition, for which he was being treated by physicians and for which he is scheduled for surgery.[5] However, Plaintiff has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. First, Plaintiff acknowledges that his conditions were not ignored. [*See, e.g.*, Doc. 1 (Plaintiff's own detailing of his interactions and appointments with medical personnel at Broad River and at Kirkland).] Plaintiff merely complains he was not provided the treatment he desired, such as stronger pain medication and sitz baths. [*Id.*] However, the medical records show that Plaintiff was seen on an almost continual basis, provided with medication, and taken for surgical consults resulting in a colonoscopy and another scheduled surgery. [Doc. 66-3.] Plaintiff also acknowledges that he was told he could not have a sitz bath because of his placement in the high security wing of the prison, SMU. [Doc. 1.] The medical records

---

[5]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

show that his request for a sitz bath was considered and requested from SMU staff, but then denied for security reasons. [Doc. 66-3 at 6.]   As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice.  *See, e.g.*, *Jackson*, 846 F.2d at 817.  A plaintiff also does not state a constitutional violation when, like here, he believes he should have been afforded better or different treatment.

Second, evidence produced by Defendants precludes finding Defendants consciously disregarded a known substantial risk to Plaintiff's health or safety.  Plaintiff's medical records show that he was seen by a doctor or nurse more than twenty times for his rectal issues alone during the 18 month period about which he complains. [*See* Doc. 66-3, compilation of Plaintiff's medical records.] Plaintiff also had a colonoscopy under general anesthesia on April 8, 2013, which included a biopsy for any malignancies, which was negative.  [*Id*. at 9.]   Moreover, as noted, Plaintiff's request for sitz baths was considered and rejected because of security concerns, legitimate particularly in light of Plaintiff's placement in a high security unit.  [*Id*. at 6].  Medical personnel recorded that Plaintiff's fissure was healing and the records demonstrate that Plaintiff's rectal area was being checked regularly.  [*Id.* at 4].  Finally, Plaintiff was seen at Kirkland on eight separate occasions by outside surgical specialists from the University of South Carolina and has been scheduled for a follow-up surgery.  [*Id*.]

A claim of deliberate indifference to serious medical needs requires a greater showing than Plaintiff has made here, even assuming Plaintiff's medical needs were serious and that a finding of negligence on the part of Defendants could be supported by

the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding the Due Process Clause is not implicated by a negligent act by a prison official that causes an unintended loss of or injury to life, liberty, or property); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Nothing that Plaintiff has even alleged, let alone proven, rises to the level of deliberate indifference, or the wanton infliction of pain. To the contrary, Plaintiff's own assertions and the medical records demonstrate that Plaintiff was seen and treated consistently after each complaint that he made. Accordingly, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants were deliberately indifferent to Plaintiff's medical needs.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 9, 2014
Greenville, South Carolina