IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| John F. Oglesby, | ) | |
| | ) | C/A No. 8:13-3378-TMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden Robert M. Stevenson, III; | ) | |
| Associate Warden Dennis Bush; | ) | |
| Associate Warden Sharonda Sutton; | ) | |
| Dr. John Tomarchio; Tamika | ) | |
| Montgomery, Grievance Coordinator; | ) | |
| Takisha Smith, RNI; Carol E. | ) | |
| Mitchell-Hamilton, Nurse Practitioner; | ) | |
| Seraphine U. Niati, RN II; Gina | ) | |
| Craig, RN; Yvonne Munro, LPN; | ) | |
| Margo R. Williams, RNI; Margaret E. | ) | |
| Jackson, RNI; Linda A. Wooten, LPN; | ) | |
| Ebony Guess, LPN; NFN Orange, RNI; | ) | |
| Erika Brown, LPN; Harvey Beech, RNI; | ) | |
| Lt. Harold Scott; Sgt. Larry Cook, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff John F. Oglesby, a state prisoner proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging claims of deliberate indifference to his serious medical needs. The Defendants Robert M. Stevenson, III, Dennis Bush, Sharonda Sutton, John Tomarchio, Tamika Montgomery, Takisha Smith, Carol Mitchell-Hamilton, Seraphine Niati, Yvonne Munro, Linda Wooten, Sherrell Orange, Harold Scott, Larry Cook, Gina Craig, and Margaret Jackson (herein referred to collectively as "Defendants") filed a summary judgment motion. (ECF No. 38).[1]

---

[1] Defendants Harvey Beach, Erika Brown, Ebony Guess, and Margo Williams have filed a separate summary judgment motion. (ECF No. 66). The magistrate judge recently filed a Report and Recommendation recommending that their summary judgment motion be granted. (ECF No.89). At the time this order was filed, the time for filing objections to that Report had not run.

Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that Defendants' Summary Judgment Motion be granted. (ECF No. 80).[2] Plaintiff timely filed objections to the Report. (ECF No. 84).[3]

## I. Facts/Background

In his 56-page Complaint, Plaintiff alleges a claim of medical indifference in regard to the treatment of his chronic anal fissure condition beginning with his initial assessment at Broad River Correctional Institution on September 25, 2012. (Compl. at 4-5). In his Complaint, Plaintiff chronicles in detail the ensuing months during which he alleges his treatment was delayed or denied despite his numerous requests for treatment and the filing of grievances.

On February 25, 2013, Plaintiff learned that he had an appointment at the University of South Carolina ("USC") Surgery Clinic at Kirkland Correctional Institution ("KCI") on February 21st, but the appointment was not kept as there was a lockdown at KCI due to a flu epidemic. Plaintiff was finally seen at the USC Surgery Clinic at KCI on March 11, 2013. The physician recommended daily sitz baths, Metamucil, continued use of the stool softener, and a colonoscopy, but advised Plaintiff he could not prescribe a narcotic pain medication. (Compl. at 19).

On April 9, 2013, a colonoscopy was performed at an outside hospital, and the results

---

[2] In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling.

[3] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

were normal.  (Compl. at 21, 25).  Plaintiff was prescribed sitz baths three times a day and Metamucil, and told to stop using the Procotzone ointment and suppositories and begin using another previously prescribed ointment three times a day.  (Compl. 22). The instructions were sent to Defendant Nurse Seraphine U. Niati ("Niati").  *Id.*

On May 1, 2013, Plaintiff and was seen by Nurse Freddie Brooks, who is not named as a defendant, and advised that he should stop the cream, and that he should have stopped using it months before.  Plaintiff states that he continued to be in pain and, despite requests made to Warden Robert M. Stevenson ("Warden Stevenson"), he never received pain medication or sitz baths during May,  June, or July 2013. (Compl. at 25-26, 28, 29).

On July 1, 2013, Plaintiff states he was seen for a follow up appointment by the surgeon, and after he told the surgeon that he had not been receiving the sitz baths, the surgeon told him that if he failed to use the sitz bath, he would experience irreversible damage in his rectum and be unable to control his bowels. (Compl. at 28-29).

On July 22, 2013, Plaintiff inquired as to the sitz baths, and Nurse B, who is not a named defendant in this action, told Plaintiff that she would contact Defendant Associate Warden Sharonda Sutton ("Associate Warden Sutton").  (Compl. at 30).   On July 24, 2013, Plaintiff was seen by Defendants Nurse Practitioner Carol Hamilton ("Hamilton") and Nurse Margaret Jackson ("Jackson"), and he asked them why he was not receiving the prescribed sitz baths. Plaintiff states that Hamilton and Jackson informed him that he could not have access to sitz baths because of security concerns. (Compl. at 30).  Plaintiff states when he asked Hamilton and Jackson if they had sought permission from Associate Wardens Bush and Sutton, they stated they had not.  *Id.*   Later that day, Plaintiff states he personally informed Associate Warden Dennis Bush ("Associate Warden Bush") about his conversation with Hamilton and Jackson and showed him the physician's recommendations.  (Compl. at 31).   Plaintiff states Associate

3

Warden Bush advised Plaintiff to send a request to staff to Bush and Associate Warden Sutton. *Id.* On August 27, 2013, Plaintiff states he again spoke with Associate Warden Bush concerning his requests for sitz baths, and he states Associate Warden Bush told him he would get back to him. (Compl. at 33).

On September 18, 2013, Plaintiff asked Defendant Nurse Jackson about the sitz baths and she told him security would not allow it. (Compl. at 34). That same day, Plaintiff states that he again spoke with Associate Warden Bush about his requests for sitz baths, and Bush told him "he wasn't going to allow that treatment." *Id*.

During September 2013, Plaintiff states he was frequently examined by medical personnel, but his requests for stronger pain medication were denied and he was told to take ibuprofen for pain. (Compl. at 35-36).

On October 3, 2013, Plaintiff states he noticed a greenish, bloody discharge in his underwear and he requested a sick call from Nurses Brown, Jackson, and Niati, but he was not seen until October 7, 2013, when he returned to KCI. (Compl. at 36). Plaintiff states he was told that if his anal fissure did not heal within the next two weeks, he would have to undergo surgery. Plaintiff states the doctors told him to use hemorrhoidal ointment and take sitz baths and ibuprofen for pain. *Id.* In October 2012, Plaintiff alleges Defendants Sgt. Larry Cook ("Sgt. Cook") and Lt. Harold Scott ("Lt. Scott") (and several officers who are not named as defendants) denied him the ibuprofen he had been prescribed or delayed giving it to him for several hours despite numerous requests. (Compl. at 36-37).

On October 28, 2013, Plaintiff was again evaluated at the USC Surgery Clinic at KCI. (Compl. at 36). Plaintiff states the physicians prescribed anusol suppositories and sitz baths and told him that if the fissure did not heal in two weeks, Plaintiff would need to undergo surgery. *Id.* Plaintiff alleges that he was denied the suppositories as he was prescribed, and that he asked

4

Defendants Nurses Erika Brown ("Brown") and Harvey Beech ("Beech") about the medication, but he did not receive the medication until November 15th. (Compl. at 38-39). Plaintiff returned to KCI on November 18, 2013, for another surgical consult. (Compl. at 39.) Plaintiff states he informed the physician that he received the suppositories only three days earlier, and the physician told him to use them for two weeks and then return for another surgical assessment. *Id.* Plaintiff underwent a fistulectomy surgical procedure in March 2014. (Pl.'s Mem. Opp. Defs.' Summ. J. Mot., Pl.'s Decl. ¶ 8; ECF No. 60-2 ¶ 8).

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. Discussion

Defendants filed this summary judgment motion alleging that Plaintiff has failed to

5

establish that they were deliberately indifferent to Plaintiff's serious medical needs. In her report, the magistrate judge assumed Plaintiff's condition was serious and, after noting that Plaintiff's condition was not ignored, found that Plaintiff has failed to establish that a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. The magistrate judge also found that Defendants were entitled to qualified immunity because Plaintiff failed to allege an actual constitutional violation. Additionally, the magistrate judge noted that Plaintiff's claims that his grievances were not properly processed is not an actionable claim under § 1983.

Upon review, the court finds that many of Plaintiff's objections are unrelated to the dispositive portions of the Magistrate Judge's Report, or merely restate his claims. The Court, however, was able to glean two specific objections: 1) the magistrate judge erred in recommending summary judgment on his medical indifference claim, and, 2) the magistrate judge erred in determining that Defendants are entitled to qualified immunity.[4]

**A. Medical Indifference Claim**

The government is required to provide medical care for incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate

---

[4]Many of Plaintiff's objections are wholly irrelevant to the issue of whether or not Defendants are entitled to summary judgment. For example, Plaintiff objects to the background section of the Report and the magistrate judge's use of the word "claims" rather than "asserts" when summarizing the allegations of the Complaint. (Objections at 1-2); and Plaintiff also objects to the magistrate judge's statement that Plaintiff went on a hunger strike to draw attention to his medical needs because he states he went on a hunger strike to obtain the necessary medical treatment to relieve his pain. (Objections at 3).

indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

A defendant is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a detainee and disregards that substantial risk. *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). Deliberate indifference is "a very high standard," *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999). In order to establish a deliberate indifference to serious medical needs, Plaintiff must demonstrate that Defendants' treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Moreover, a significant delay in medical treatment may give rise to a constitutional violation, but only if the delay results in substantial harm to the patient. *Webb v. Hamidullah,* 281 Fed. Appx. 159, 166 (4th Cir. 2008). Substantial harm may be most persuasively demonstrated where the delay in treatment causes further injury to the inmate, but the requirement may also be met where the delay causes unnecessarily prolonged pain and suffering. *Webb v. Driver,* 313 Fed. Appx. 591, 593 (4th Cir. 2008).

While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. "Disagreements between an inmate and a physician over the inmate's proper medical care are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983." *See United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citations omitted). Furthermore, "an inadvertent failure to provide adequate medical care" does not meet the standard required to claim an Eighth Amendment violation, nor does "mere negligence or malpractice." *Estelle*, 429 U.S. at 105-06. Notably, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 840-42.

The magistrate judge assumed, without deciding, that Plaintiff has a serious medical condition, but determined that Plaintiff has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. (Report at 12). The magistrate then went on to state that, upon a review of Plaintiff's medical records, Plaintiff was treated consistently, and Plaintiff "merely complains he was not provided the treatment he desired." (Report at 12). Further, the magistrate judge states that "medical records show that [Plaintiff's] request for a sitz bath was considered and requested from SMU staff, but then denied for security reasons" (Report at 12), which the magistrate judge found to be "legitimate, particularly in light of Plaintiff's placement in a high security unit." (Report at13).

Plaintiff objects to the magistrate judge's determination that Plaintiff has received treatment, just not the treatment he desired - stronger pain medication and sitz baths. (Objections at 6). Plaintiff argues that he wanted the treatment which was recommended by his doctors. (Objections at 6,8).

The court agrees with the magistrate judge that Plaintiff did receive some treatment for his serious medical condition. However, taking the allegations in the Complaint as true, Plaintiff's treatment prescribed by his physicians was often delayed and, at other times, outright denied.[5] Plaintiff alleges he was denied ibuprofen, ointment, and sitz baths, all which his physicians had prescribed. The court is most concerned with the denial of the sitz baths, which Defendants contend were denied for security reasons. However, these security reasons are never detailed anywhere in the record before the court, and it appears that no alternative treatment was

---

[5]As the magistrate judge noted, (Report at 12 n.4), a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir.2008) (internal citation omitted). While the Defendants state that "[o]ther than pain and discomfort, if hemorrhoids and an anal fissure are not treated, they do not progress to any type of malignancy," Defendants do not contend that Plaintiff's condition was not serious.

8

sought or even considered.

In support of their summary judgment motion, Defendants filed an affidavit from only Defendant Dr. John Tomarchio and Plaintiff's medical records. In his affidavit, Dr. Tomarchio acknowledged that he and other physicians had prescribed sitz baths (ECF No. 38-2 at 6-7, 10), but that "correctional officers determined that the sitz baths could not be done in [the specialized management unit], because of security reasons." (ECF No. 38-2 at 10). Dr. Tomarchio then states that "Plaintiff not having the sitz baths did not exacerbate his problems with the hemorrhoids and the anal fissure and did not prolong any of his pain and suffering." *Id*. Yet, Dr. Tomarchio also states that "[b]ecause the conservative, non-operative treatment initially recommended by the surgeons did not resolve or heal Plaintiff's hemorrhoids and anal fissure, the surgeons now want to proceed with surgical intervention, and a fistulectomy is scheduled." ECF No. 38-2 at 12). As Plaintiff disputes this, there remains of a question of material fact as to whether the medical Defendants' denial of prescribed treatment amounts to the deliberate indifference to Plaintiff's serious medical condition.

In his Complaint, Plaintiff sets forth allegations regarding the personal responsibilities of each Defendant. (Compl. 41-54). Plaintiff refers to specific dates and actions and/or inactions of each Defendant. *Id.* Reviewing the Complaint, however, the court determines that the allegations as to some of the Defendants do not establish a claim of medical indifference.

The court first addresses the medical Defendants: Dr. Tomarchio, Nurse Practitioner ("NP) Carol E. Mitchell-Hamilton, Registered Nurses ("RN") Takisha Smith, Seraphine U. Niati, Margaret Jackson, and NFN Orange, and licensed practical nurses (LPN") Yvonne Munro and Linda Wooten[6]. As to Dr. Tomarchio, NP Mitchell-Hamilton, RNs Niati, and Jackson,

---

[6]Again, the court notes that the other medical Defendants Harvey Beach, Erika Brown, Ebony Guess, and Margo Williams are not before the court at this time.

9

Plaintiff has alleged sufficient personal involvement. It is undisputed that Dr. Tomarchio recommended sitz baths and knew that Plaintiff's surgeon had prescribed sitz baths, but allegedly because of security reasons, he was not allowed to have the sitz baths. (See Tomarchio Aff. at 9, 11). Further, Plaintiff has alleged that NP Mitchell-Hamilton and RNs Niati and Jackson were personally aware Plaintiff had been prescribed sitz baths, but was not being given sitz baths, and did not act. (Compl. 30-31, 34, 45-46, 49). Deliberate indifference can be manifested by intentional denial or delay of access to medical care, or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. There remains of a question of material fact as to whether these medical Defendants' denial of prescribed treatment amounts to the deliberate indifference to Plaintiff's serious medical condition and whether these Defendants acted with deliberate indifference.

As to RN Smith, Plaintiff alleges as the head nurse she received notice of Plaintiff's grievances and requests to staff forms and failed to act. (Compl. at 44). As to LPNs Munro and Wooten, Plaintiff alleges they were made aware of his condition and prescribed sitz baths because they had access to Plaintiff's medical summary encounter sheet and physicians' notes and they received his complaints. (Compl. at 48, 50). As to RN Orange, Plaintiff alleges that she knew of the delay and denial of treatment because she answered requests to staff forms addressed to other staff members. (Compl. at 51). The court finds these allegations insufficient to establish a claim of medical indifference.

As for the non-medical Defendants, Warden Stevenson, Associate Warden Bush, Associate Warden Sutton, Lt. Scott, and Sgt. Cook, Defendants contend that these Defendants did not make any decisions regarding Plaintiff's medical treatment and did not deny Plaintiff access to treatment, and they were entitled to rely on the opinions, judgment, and expertise of the medical staff. The court agrees that non-medical prison personnel may rely on the opinion of the

medical staff as to the proper course of treatment. *Miltier v. Born*, 896 F.2d 848, 854-55 (4th Cir.1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). However, deliberate indifference may manifest itself in a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104-05.

In order to succeed on a medical indifference claim against non-medical personnel, Plaintiff must establish that the non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's misconduct. *Id.* Supervisory defendants may be liable if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Id.* at 854. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.*

Here, reviewing the Complaint, and taking the allegations as true, Plaintiff alleges that the non-medical Defendants Warden Stevenson, Associate Warden Bush, Associate Warden Sutton, Lt. Scott, and Sgt. Cook, had personal involvement, other than a mere supervisory role, and Plaintiff has alleged facts which could establish deliberate indifference to plaintiff's medical serious condition. (Compl. 13-14, 15, 26, 30, 31-32, 33, 34, 36, 37, 41-43).[7] Plaintiff alleges that each of these Defendants personally knew that Plaintiff was prescribed sitz baths and/or

---

[7] The court notes that none of these Defendants submitted an affidavit with their summary judgment motion.

ibuprofen, and yet denied Plaintiff the prescribed treatment. None of these Defendants filed an affidavit disputing the allegations in the Complaint, and as discussed above, the one affidavit filed in support of the Defendants' Motion for Summary Motion is contradictory. There remains a question of material fact as to whether the non-medical Defendants' denial of prescribed treatment amounts to the deliberate indifference to Plaintiff's serious medical condition and whether these Defendants acted with deliberate indifference. "[Defendants] may ultimately persuade a factfinder, but this argument cannot prevail on summary judgment, for at this stage [the court does] not find facts. Rather, with respect to any factual dispute, [the court] must take the facts in the 'light most favorable to the party asserting the injury,' i.e. Plaintiff." *Miller v. Prince George's Cty.*, 475 F.3d 621, 628-629 (4th Cir. 2007) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

As to non-medical Defendant Tamika Montgomery, the grievance coordinator, Plaintiff alleges that she was aware of his complaints concerning his serious medical condition, in her role as grievance coordinator, and failed to act. (Compl. at 44-45). Plaintiff also alleges Gina M. Craig, an administrative assistant, was made aware of his complaints by the medical summary encounter sheet, the physician's transfer notes, and the surgical patient discharge instructions. (Compl. at 48).[8] The dismissal of non-medical defendants is appropriate where the defendants' sole involvement is the denial of an administrative remedy request. *See Brooks v. Bufford,* 2011 WL 2119281, *9 (D.S.C. 2011)(*citing Paige v. Kupec*, 2003 WL 23274357 *1 (D.Md. March 31, 2003) (holding a defendant is not deliberately indifferent to his serious medical needs by denying administrative grievances, or by failing to respond to such

---

[8]The court notes that in his Complaint, Plaintiff list Craig as an RN (Compl. at1), but he later refers to her an administrative assistant (Compl. at 48). The court has analyzed this issue as though Craig is an non-medical defendant. However, even if Craig is a nurse, the court would find that Plaintiff has not alleged sufficient personal involvement in regard to Craig, and Craig should be dismissed.

grievances)). *See also Freeland v. Ballard*, 2014 WL 989194, * 9 (S.D.W.Va. Mar.13, 2014) (holding that the mere fact that the defendant knew about the plaintiff's allegations through a grievance and denied that grievance does not demonstrate he was aware of a "pervasive and unreasonable risk" requiring him to act or else be held liable). The court finds Plaintiff's allegations regarding Defendants Montgomery and Craig do not support a claim of medical indifference, and, therefore, they are dismissed.[9]

### B. Qualified Immunity

In their motion for summary judgment, Defendants also asserted that they are entitled to qualified immunity based upon Plaintiff's medical records which they contends show no constitutional violation, and, even if Defendants are found to have violated Plaintiff's rights, the Defendants contend that they acted in an objectively reasonable manner. (Defs.' Mem. Supp. Summ. J. Mot. at 15).   The magistrate judge agreed based upon her determination that Plaintiff has not alleged an actual constitutional violation. (Report at 17). Because of this finding, the magistrate judge did not discuss whether Defendants acted in an objectively reasonable manner.

When evaluating a qualified immunity defense, the court must determine 1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and 2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.

Here, the magistrate judge determined that Defendants were entitled to qualified immunity because none of Plaintiff's clearly established rights were violated. (Report at 15). As

---

[9]Moreover, as to any claims that Plaintiff's grievances were not handled properly, the court notes that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994).

explained above, however, the court has determined that the facts, taken in the light most favorable to Plaintiff, establish a constitutional violation of a clearly established right. The court notes that, in his Complaint, Plaintiff has set forth allegations of misconduct of each remaining Defendant relating to the delay or denial of the treatment prescribed by Plaintiff's physicians. *See Danser v. Stansberry*, ___ F.3d ___ , 2014 WL 2978541 (4th Cir. July 3, 2014) (in a *Biven's* action, liability must be imposed only for an official's own conduct). The court notes that there is nothing in the record from Defendants which disputes Plaintiff's allegations that he was denied prescribed treatment. Defendants have submitted only Plaintiff's medical records and Dr. Tomarchio's affidavit in which Dr. Tomarchio acknowledges that Plaintiff was prescribed sitz baths, but never received them for security reasons. Moreover, there is nothing in the record as to the specifics of the security reasons or whether any alternatives were considered. Furthermore, as discussed above, there exists a genuine issue of material fact as to effect of the denial of these sitz baths. *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 771-72 (4th Cir. 2003) (holding prison officials not entitled to qualified immunity at summary judgment because affirmative evidence showed they knew of and disregarded an excessive risk to plaintiff's safety). Accordingly, the court finds Defendants are not entitled to qualified immunity.

## IV. Conclusion

Based on the foregoing, the court declines to adopt the Report (ECF No. 80), and Defendants' Summary Judgment (ECF No. 38) is **DENIED in part and Granted in part. Plaintiff's claims regarding the processing of his grievances are dismissed. Further, Defendants Montgomery, Craig, Smith, Munro, Orange, and Wooten are dismissed. Only Plaintiff's claims of medical indifference against Defendants Warden Stevenson, Associate Warden Bush, Associate Warden Sutton, Dr. Tomarchio, Mitchell-Hamilton, Niati,**

14

**Jackson, Lt. Scott, and Sgt. Cook remain pending.**

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

September 25, 2014
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.