IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| John F. Oglesby, | ) | |
| | ) | C/A No. 8:13-3378-TMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden Robert M. Stevenson, III; | ) | |
| Associate Warden Dennis Bush; | ) | |
| Associate Warden Sharonda Sutton; | ) | |
| Dr. John Tomarchio; Tamika | ) | |
| Montgomery, Grievance Coordinator; | ) | |
| Takisha Smith, RNI; Carol E. | ) | |
| Mitchell-Hamilton, Nurse Practitioner; | ) | |
| Seraphine U. Niati, RN II; Gina | ) | |
| Craig, RN; Yvonne Munro, LPN; | ) | |
| Margo R. Williams, RNI; Margaret E. | ) | |
| Jackson, RNI; Linda A. Wooten, LPN; | ) | |
| Ebony Guess, LPN; NFN Orange, RNI; | ) | |
| Erika Brown, LPN; Harvey Beech, RNI; | ) | |
| Linda Fields, LPN; Lt. Harold Scott; | ) | |
| Sgt. Larry Cook, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff John F. Oglesby, a state prisoner proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging claims of deliberate indifference to his serious medical needs. Before the court is a summary judgment motion filed by Defendants Harvey Beech, Erika Brown, Ebony Guess, and Margo Williams (herein referred to collectively as "Defendants"). (ECF No. 66).[1] The magistrate judge filed a Report and Recommendation ("Report"), recommending that Defendants' Summary Judgment Motion be granted. (ECF No. 89).[2] Plaintiff timely filed

---

[1] The other defendants filed a separate summary judgment motion. (ECF No. 38).

[2] In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling.

objections to the Report. (ECF No. 95).[3]

## I. Facts/Background

In his 56-page Complaint, Plaintiff alleges a claim of medical indifference in regard to the treatment of his chronic anal fissure condition beginning with his initial assessment at Broad River Correctional Institution ("BRCI") on September 25, 2012. (Compl. at 4-5). Plaintiff chronicles in detail the ensuing months during which he alleges his treatment was delayed or denied despite his numerous requests for treatment and the filing of grievances. During the time of the alleged incidents, Defendants worked as nurses at the BRCI. Defendants Guess, Brown and Beach are licensed practical nurses ("LPNs") and Defendant Williams is a registered nurse ("RN").

On February 25, 2013, Plaintiff learned that he had an appointment at the University of South Carolina ("USC") Surgery Clinic at Kirkland Correctional Institution ("KCI") on February 21st, but the appointment was not kept as there was a lockdown at KCI due to a flu epidemic. Plaintiff was finally seen at the USC Surgery Clinic at KCI on March 11, 2013. The physician recommended daily sitz baths, Metamucil, continued use of the stool softener, and a colonoscopy, but advised Plaintiff he could not prescribe a narcotic pain medication. (Compl. at 19).

On April 9, 2013, a colonoscopy was performed at an outside hospital, and the results were normal. (Compl. at 21, 25). Plaintiff was prescribed sitz baths three times a day and Metamucil, and told to stop using the Procotzone ointment and suppositories and begin using

---

[3] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

another previously prescribed ointment three times a day. (Compl. 22). The instructions were sent to Defendant Nurse Seraphine U. Niati ("Niati"). *Id.*

On May 1, 2013, Plaintiff and was seen by Nurse Freddie Brooks, who is not named as a defendant, and advised that he should stop the cream, and that he should have stopped using it months before. Plaintiff states that he continued to be in pain and, despite requests made to Warden Robert M. Stevenson ("Warden Stevenson"), he never received pain medication or sitz baths during May, June, or July 2013. (Compl. at 25-26, 28, 29).

On July 1, 2013, Plaintiff states he was seen for a follow up appointment by the surgeon, and after he told the surgeon that he had not been receiving the sitz baths, the surgeon told him that if he failed to use the sitz bath, he would experience irreversible damage in his rectum and be unable to control his bowels. (Compl. at 28-29).

On July 22, 2013, Plaintiff inquired as to the sitz baths, and Nurse B, who is not a named defendant in this action, told Plaintiff that she would contact Defendant Associate Warden Sharonda Sutton ("Associate Warden Sutton"). (Compl. at 30). On July 24, 2013, Plaintiff was seen by Defendants Nurse Practitioner Carol Hamilton ("Hamilton") and Nurse Margaret Jackson ("Jackson"), and he asked them why he was not receiving the prescribed sitz baths. Plaintiff states that Hamilton and Jackson informed him that he could not have access to sitz baths because of security concerns. (Compl. at 30). Plaintiff states when he asked Hamilton and Jackson if they had sought permission from Associate Wardens Bush and Sutton, they stated they had not. *Id.* Later that day, Plaintiff states he personally informed Associate Warden Dennis Bush ("Associate Warden Bush") about his conversation with Hamilton and Jackson and showed him the physician's recommendations. (Compl. at 31). Plaintiff states Associate Warden Bush advised Plaintiff to send a request to staff to Bush and Associate Warden Sutton. *Id.* On August 27, 2013, Plaintiff states he again spoke with Associate Warden Bush concerning

3

his requests for sitz baths, and he states Associate Warden Bush told him he would get back to him.  (Compl. at 33).

On September 18, 2013, Plaintiff asked Defendant Nurse Jackson about the sitz baths and she told him security would not allow it.  (Compl. at 34).  That same day, Plaintiff states that he again spoke with Associate Warden Bush about his requests for sitz baths, and Bush told him "he wasn't going to allow that treatment."  *Id*.

During September 2013, Plaintiff states he was frequently examined by medical personnel, but his requests for stronger pain medication were denied and he was told to take ibuprofen for pain.  (Compl. at 35-36).

On October 3, 2013, Plaintiff states he noticed a greenish, bloody discharge in his underwear and he requested a sick call from Nurses Brown, Jackson, and Niati, but he was not seen until October 7, 2013, when he returned to KCI.  (Compl. at 36).  Plaintiff states he was told that if his anal fissure did not heal within the next two weeks, he would have to undergo surgery. Plaintiff states the doctors told him to use hemorrhoidal ointment and take sitz baths and ibuprofen for pain.  *Id.*  In October 2012, Plaintiff alleges Defendants Sgt. Larry Cook ("Sgt. Cook") and Lt. Harold Scott ("Lt. Scott") (and several officers who are not named as defendants) denied him the ibuprofen he had been prescribed or delayed giving it to him for several hours despite numerous requests. (Compl. at 36-37).

On October 28, 2013, Plaintiff was again evaluated at the USC Surgery Clinic at KCI. (Compl. at 36).  Plaintiff states the physicians prescribed anusol suppositories and sitz baths and told him that if the fissure did not heal in two weeks, Plaintiff would need to undergo surgery. *Id.*  Plaintiff alleges that he was denied the suppositories as he was prescribed, and that he asked Defendants Nurses Brown and Beech about the medication, but he did not receive the medication until November 15th. (Compl. at 38-39).  Plaintiff returned to KCI on November 18,

4

2013, for another surgical consult. (Compl. at 39.) Plaintiff states he informed the physician that he received the suppositories only three days earlier, and the physician told him to use them for two weeks and then return for another surgical assessment. *Id.* Plaintiff underwent a fistulectomy surgical procedure in March 2014. (Pl.'s Mem. Opp. Defs.' Summ. J. Mot., Pl.'s Decl. ¶ 8; ECF No. 60-2 ¶ 8).

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. Discussion

Defendants filed this summary judgment motion alleging that Plaintiff has failed to: 1) comply with the South Carolina Medical Malpractice Reform Act, S.C. Code Ann. § 15-36-100(B) which requires that an expert affidavit be filed with the Complaint; 2) establish that the Defendants were deliberately indifferent to Plaintiff's serious medical needs; and 3) exhaust his administrative remedies. In her report, the magistrate judge found that the South

Carolina Medical Malpractice Reform Act was not applicable to Plaintiff's § 1983 claims and noted that Plaintiff had filed Step 1 and 2 grievances. (Report at 10 n.3 and 4). Therefore, she declined to recommend that summary judgement be granted to the Defendants based on those two grounds and instead addressed the merits of Plaintiff's claims. The magistrate judge assumed Plaintiff's condition was serious and, after noting that Plaintiff's condition was not ignored, found that Plaintiff has failed to establish that a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind.

Upon review, the court finds that many of Plaintiff's objections are unrelated to the dispositive portions of the Magistrate Judge's Report, or merely restate his claims. The Court, however, was able to glean one specific objection - the magistrate judge erred in recommending summary judgment on his medical indifference claim because Defendants failed to provide Plaintiff with prescribed treatment.

The government is required to provide medical care for incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

A defendant is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a detainee and disregards that substantial risk. *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). Deliberate indifference is "a very high standard," *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999). In order to establish a deliberate indifference to serious medical needs, Plaintiff

6

must demonstrate that Defendants' treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Moreover, a significant delay in medical treatment may give rise to a constitutional violation, but only if the delay results in substantial harm to the patient. *Webb v. Hamidullah,* 281 Fed. Appx. 159, 166 (4th Cir. 2008). Substantial harm may be most persuasively demonstrated where the delay in treatment causes further injury to the inmate, but the requirement may also be met where the delay causes unnecessarily prolonged pain and suffering. *Webb v. Driver,* 313 Fed. Appx. 591, 593 (4th Cir. 2008).

While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. "Disagreements between an inmate and a physician over the inmate's proper medical care are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983." *See United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011)  (citations omitted). Furthermore, "an inadvertent failure to provide adequate medical care" does not meet the standard required to claim an Eighth Amendment violation, nor does "mere negligence or malpractice." *Estelle*, 429 U.S. at 105-06.  Notably, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 840-42.

The magistrate judge assumed, without deciding, that Plaintiff has a serious medical condition, but determined that Plaintiff failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. (Report at 12). The magistrate then went on to state that, upon a review of Plaintiff's medical records, Plaintiff was treated on an almost continual basis, and Plaintiff "merely complains he was not provided the treatment he desired."  (Report at 12).  Further, the magistrate judge states that "medical

7

records show that [Plaintiff's] request for a sitz bath was considered and requested from SMU staff, but then denied for security reasons" (Report at 12-13), which the magistrate judge found to be "legitimate particularly in light of Plaintiff's placement in a high security unit." (Report at13).

Plaintiff objects to the magistrate judge's determination that Plaintiff has received treatment, just not the treatment he desired - stronger pain medication and sitz baths. (Objections at 6). Plaintiff argues that he wanted the treatment which was recommended by his doctors. (Objections at 6,8).

The court agrees with the magistrate judge that Plaintiff did receive some treatment for his serious medical condition. However, taking the allegations in the Complaint as true, Plaintiff's treatment prescribed by his physicians was often delayed and, at other times, outright denied.[4] Plaintiff alleges he was denied ibuprofen, ointment, and sitz baths, all which his physicians had prescribed. The court is most concerned with the denial of the sitz baths, which Defendants contend were denied for security reasons. However, these security reasons are never detailed anywhere in the record before the court, and it appears that no alternative treatment was sought or even considered.

In support of their summary judgment motion, Defendants each filed an affidavit and an affidavit from Defendant Dr. John Tomarchio along with Plaintiff's medical records. (ECF No. 66-2 through 66-7). In his affidavit, Dr. Tomarchio acknowledged that he and other physicians had prescribed sitz baths (ECF No. 66-2 at 6-7, 10), but that "correctional officers determined

---

[4]As the magistrate judge noted, (Report at 12 n.5), a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). While the Defendants state that "[o]ther than pain and discomfort, if hemorrhoids and an anal fissure are not treated, they do not progress to any type of malignancy," Defendants do not contend that Plaintiff's condition was not serious.

that the sitz baths could not be done in [the specialized management unit], because of security reasons." (ECF No. 66-2 at 10). Dr. Tomarchio then states that "Plaintiff not having the sitz baths did not exacerbate his problems with the hemorrhoids and the anal fissure and did not prolong any of his pain and suffering." *Id*. Yet, Dr. Tomarchio also states that "[b]ecause the conservative, non-operative treatment initially recommended by the surgeons did not resolve or heal Plaintiff's hemorrhoids and anal fissure, the surgeons now want to proceed with surgical intervention, and a fistulectomy is scheduled." (ECF No. 66-2 at 12).

In his Complaint, Plaintiff sets forth allegations regarding the personal responsibilities of each Defendant. (Compl. 41-54). Plaintiff refers to specific dates and actions and/or inactions of each Defendant. *Id.* Reviewing the Complaint, however, the court determines that the allegations as to Defendant Williams do not establish a claim of medical indifference. Plaintiff alleges that Williams was responsible for updating his medical records and knew that he had been prescribed sitz baths and should have scheduled the treatment for Plaintiff. (Compl. at 47). The court finds these allegations insufficient to establish a claim of medical indifference against Defendant Williams.

Plaintiff alleges Defendants Beach, Guess, and Brown, who actually administered medications on SMU at BRCI, were personally aware Plaintiff had been prescribed sitz baths, but was not being given sitz baths, and did not act. (Compl. 50-52). In their affidavits, these Defendants deny that they ignored Plaintiff's requests for help or denied him ordered medications. (No. 66-5 at ¶ 12; 66-6 at ¶14; 66-7 at ¶14). Deliberate indifference can be manifested by intentional denial or delay of access to medical care, or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. There remains of a question of material fact as to whether these medical Defendants' denial of prescribed treatment amounts to the deliberate indifference to Plaintiff's serious medical condition and whether these Defendants

9

acted with deliberate indifference. Accordingly, the court denies summary judgment to Defendants Beach, Guess, and Brown.

## IV. Conclusion

Based on the foregoing, the court declines to adopt the Report (ECF No. 89), and Defendants' Summary Judgment (ECF No. 66) is **DENIED in part and GRANTED in part**. The court denies summary judgment to Defendants Beach, Guess, and Brown and grants summary judgment to only Defendant Williams.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

Anderson, South Carolina
December 31, 2014

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.